IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. HERIAUD and PAT HERIAUD, | ) ) ) |
| Plaintiffs, | ) No. 03 C 0289 ) |
| v. | ) Judge Paul E. Plunkett ) |
| RYDER TRANSPORTATION SERVICES,) RYDER TRUCK RENTAL, INC., MORGAN CORPORATION, and THE MAXON LIFT CORPORATION, | Magistrate Judge Arlander Keys ) ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

On December 22, 2000, Thomas Heriaud, who was working at the time as a delivery truck operator, was injured on the job while using the tail gate lift device on a truck leased to his employer by Ryder. Mr. Heriaud sued Ryder, alleging that the lift was defective and that Ryder should therefore be liable for his injuries; he also sued Morgan Corporation and the Maxon Lift Corporation, which are alleged to have been involved in the design, manufacture, and distribution of the lift. Mr. Heriaud's wife joined in the suit, alleging loss of society. The defendants removed the case, and discovery has been limping along, with a relatively high degree of court intervention and monitoring. The case is currently before the Court on a motion for sanctions filed by the defendants.

The defendants seek sanctions for the way the Heriauds' attorney, Bradley D. Steinberg, behaved at the May 17, 2005 deposition of the plaintiffs' liability expert, Douglas Morita; they also seek sanctions based upon the way Mr. Morita conducted himself at the deposition. According to the defendants, throughout Mr. Morita's deposition, Mr. Steinberg, made "speaking objections," with the apparent intention of, at times, testifying for Mr. Morita, and, at other times, signaling to Mr. Morita that he should testify (or not testify) in a particular manner. At one point during the deposition, the parties called the Court to seek guidance as to how to proceed, and the Court admonished Mr. Steinberg that his objections were improper and that he should stop making them. He apparently declined to follow the Court's instruction, and, ultimately, the defendants terminated the deposition.

Thereafter, Ryder, Morgan Corporation and Maxon Lift filed separate motions for sanctions. In its motion, Ryder asks the Court to disqualify Mr. Morita from further participation in the case, to censure Mr. Steinberg for his conduct, and to impose a monetary sanction on Mr. Steinberg and the Heriauds to cover the fees and costs Ryder incurred to have its attorneys prepare for and attend the aborted Morita deposition and to prepare the motion for sanctions. Morgan asks the Court to order Mr.

Morita's re-deposition; it also seeks sanctions against Mr.
Steinberg. Maxon Lift argues that the defendants and the Court
have tolerated Mr. Steinberg's conduct for far too long. It asks
the Court to bar Mr. Morita from testifying at trial;
alternatively, Maxon asks the Court to order plaintiffs and Mr.
Steinberg to pay Maxon for the attorneys' fees it incurred in
preparing for and attending Mr. Morita's deposition, and to order
plaintiffs and Mr. Steinberg to again produce Mr. Morita for
deposition, at their expense.

The defendants seek sanctions under Rules 30(d)(3) and
37(b)(2)(E) of the Federal Rules of Civil Procedure. Rule
30(d)(3) provides that "[i]f the court finds that any impediment,
delay, or other conduct has frustrated the fair examination of
the deponent, it may impose upon the persons responsible an
appropriate sanction, including the reasonable costs and
attorney's fees incurred by any parties as a result thereof."
Rule 37(b)(2) provides, in relevant part, that:

> [i]f a party or an officer, director, or managing agent
> of a party or a person designated under Rule 30(b)(6)
> or 31(a) to testify on behalf of a party fails to obey
> an order to provide or permit discovery, including an
> order made under subdivision (A) of this rule or Rule
> 35, or if a party fails to obey an order entered under
> Rule 26(f), the court in which the action is pending
> may make such orders in regard to the failure as are
> just, and among others the following:
>
> (E) Where a party has failed to comply with an

3

order under Rule 35(a) requiring that party to produce
another for examination, such orders as are listed in
paragraphs (A), (B), and (C) of this subdivision,
unless the party failing to comply shows that that
party is unable to produce such person for examination.

Subsections (A), (B), and (C) allow the Court to order that

certain matters are deemed established (subsection A); to bar the

disobedient party from supporting or opposing certain claims or

defenses or prohibit that party from introducing designated

matters into evidence (subsection B); and to strike out pleadings

or parts thereof or dismiss the case entirely. Fed. R. Civ. P.

37(b)(2). Under this rule, the Court can also order the

disobedient party to pay the reasonable expenses, including

attorney's fees, incurred as a result of the disobedience. *Id.*

There is no question in this case that Mr. Steinberg's

conduct "frustrated the fair examination of" Mr. Morita. He was

hostile from the beginning, and he remained in that posture

throughout the deposition. With counsel's third question, Mr.

Steinberg was argumentative and combative – for no apparent

reason:

[By Mr. Fuoco] Q Were you aware of the need to
produce any and all documents to comprise a complete
and unabridged case file?

Mr. Steinberg: Well, wait, you submitted a written
document list as to what you wanted. And to the best
of Mr. Morita's and Polytechnic's ability, those
documents you requested were produced.

4

Mr. Fuoco: Brad, are you testifying for Mr. Morita?

Mr. Steinberg: No, I am saying that what it was that was produced was pursuant to a specific request, not your oral one as you phrased it just now.

Transcript of Deposition of Douglas R. Morita, pp. 4-5. After Mr. Steinberg's interruption, counsel asked the same question again and, this time, got an answer:

Q At some point in time did you become aware of the need to produce your complete and unabridged case review material file?

A Yes.

Transcript of Morita Dep., pp. 4-5. Although this is a relatively mundane question and answer, the example is indicative of how Mr. Steinberg's constant interruptions and interjections, which began at the earliest opportunity, impeded the flow and progress of the deposition.

Mr. Steinberg also interrupted the deposition when counsel marked exhibits. After counsel marked the first exhibit, clearly saying that he was going to mark it as "Group Exhibit A," Mr. Steinberg interjected the following:

Mr. Steinberg: Excuse me. You're going to mark this 1 or A did you say? Which was it?

Mr. Fuoco: A.

Mr. Steinberg: All right. So if I understand then your procedure, you're going to be using an alphabetized form of exhibit identification, is that

5

correct?

Transcript of Morita Dep., pp. 7-8. When counsel stated that he
was marking the second exhibit as "Group B," Mr. Steinberg again
chimed in:

     Mr. Steinberg: For the record, Mr. Fuoco, is it
correct that you've identified Morita Group Exhibit B,
numbered pages 1 through and including 16, as being
reflective of professional services and the time sheet
total, is that correct?

     Mr. Fuoco: Remember, Brad, I don't answer
deposition questions.

     Mr. Steinberg: Well, you marked it. I'm asking
you to correct it –

     Mr. Fuoco: You didn't give me a chance, Brad.

     Mr. Steinberg: Go ahead.

Transcript of Morita Dep., pp. 11-12. Again, this is really more
annoying than prejudicial; it merely illustrates Mr. Steinberg's
attempts to take charge and to impede and slow counsel's
questioning of the witness.

    And there are plenty of examples of more prejudicial
interjections. To cite just one, when counsel attempted to ask
Mr. Morita about his findings concerning the cause of the lift
gate's failure--one of the most critical issues in the case--Mr.
Steinberg obstructed the dialogue:

     Q Okay. Now sudden loading would mean an overload
situation?

6

A Yes.

Q Meaning if the capacity of the lift gate is 1600 pounds there was more than 1600 pounds on the lift gate platform, true?

A False.

Q Okay. In a sudden loading situation, we've already established it's an overload, right?

Mr. Steinberg: Excuse me, are you talking now about what he and I discussed or do you now just want to argue with him concerning the fact that there was no evidence of an overload? Which – could you clarify your question? ... He is attempting to describe, if I understand your question correctly, the fact that there was no overload.

Transcript of Morita Dep., pp. 16-17.

This prompted counsel for Ryder to admonish Mr. Steinberg "not to narrate" and to limit his comments to evidentiary objections, as required by the federal rules. See Transcript of Morita Dep., pp. 16-17. This, in turn, seemed to prompt Mr. Steinberg to interrupt even more, mostly to ask the court reporter to read a question or an answer back, see, e.g., Transcript of Morita Dep., pp. 21, 22, 24, 35, 37. And it also seemed to escalate his hostility. At page 24 of the transcript, he made a particularly accusatory objection for vagueness: "[t]hat question is so vague and so indefinite as to almost be incomprehensible and probably is incomprehensible. I'm objecting to it. It's vague and incomprehensible." And then, when counsel

asked whether, despite the objection, Mr. Morita could answer the question, Mr. Steinberg interjected:

Excuse me, would you just let him answer one question at a time? He is at this time going through his file. Please let him finish doing what he's doing before you put another question.

Transcript of Morita Dep., p. 25. And when counsel noted his intention to mark the interjection as an example of an inappropriate comment, Mr. Steinberg retorted with "[i]f you will permit him to just go through his file before putting another question to him, I believe that would be a less oppressive and annoying way of conducting the deposition." Transcript of Morita Dep., p. 25.

Mr. Steinberg's conduct at the deposition, appears to have been designed to rile his adversaries, and to suggest answers to Mr. Morita. Counsel for Ryder tried to work around him and tried to ignore him at times, but Mr. Steinberg just kept inserting himself into the proceedings. He interrupted the proceedings, for among other things, to ask whether the attorneys had decided how they intended to divide the seven hours allotted for Mr. Morita's deposition, to ask counsel for Ryder to get some kleenex, and to ask the court reporter what time she officially started the deposition.

Rule 30(d) requires that "any objection during a deposition

must be stated concisely and in a non-argumentative and non-suggestive manner." Mr. Steinberg repeatedly violated this rule. He did not simply state the basis for his objections and allow the deposition to continue; rather, he consistently inserted himself into the process by giving lengthy soliloquies as to how counsel's performance and questions were lacking, and he refused to be ignored. To cite just one example, after one straight-forward question, Mr. Steinberg objected as follows:

> Now, your question, again, there's an ambiguity in it I'd like you to clarify. Are you saying that elements of what you have said, are you asking whether elements have been used by him or are you asking that particular form and format that you're talking about used by him, which do you mean?
>
> By Mr. Fuoco: [to Mr. Morita] Sir, do you understand my question?
>
> Mr. Steinberg: You refuse to clarify the question apparently for the record. And, again, I think this is a violation of the Rule 30 because I have asked him to clarify and the interrogator refuses to clarify.

Transcript of Morita Dep., pp. 49-50. Over the next several questions, Mr. Steinberg continued to press his demand for clarification, despite the fact that the witness seemed not to need any. He interjected:

> Now, again, that question is ambiguous. Are you including in this the contracts, are you including the documents that deal with what it was that was undertaken by Ryder in the format? In other words, is that included in your question or are you excluding it? So if you would clarify what you mean, please.

9

Transcript of Morita Dep., pp. 54-55. And then:

> What do you mean by all that he's learned? He's got
> his background and experience. Are you excluding that?
> Please clarify what you mean by all that he has
> learned. Clarify it.

Transcript of Morita Dep., p. 56. And then, in case anyone had

missed his objections:

> On several occasions thus far, okay, I have asked
> for clarification. In the absence of clarification of
> this type and form of question is annoying. It is also
> abusive in the absence of clarifying. And that is the
> reason why it is that I am asking for clarification so
> that we can move on with this deposition.

Transcript of Morita Dep., p. 57. Undeterred, after the next

question, he interjected:

> Excuse me. Again, will you please clarify, are
> you asking for the basis? Are you asking for the
> substantive information? Will you please clarify? And
> in the absence of this, your question is abusive, it's
> annoying, okay? And it's deliberately ambiguous. Will
> you please clarify it?

Transcript of Morita Dep., p. 57. Without belaboring the point,

the repeated and often lengthy diatribes in search of

"clarification" continued – all despite the fact that Mr. Morita,

who had already demonstrated that he was perfectly capable of

seeking clarification when he needed it, did not seem to be

struggling with the questions.

And Mr. Steinberg's objections and demeanor became

increasingly hostile and personal as the deposition proceeded.

10

At one point, Mr. Steinberg objected to a question by telling counsel "you either don't know what you're doing or you are complicating things in such a way as to make the question incomprehensible scientifically." Transcript of Morita Dep., p. 39. Although he said, on the record, that he was doing what he needed to do to preserve objections, it is impossible to imagine that he actually believed his conduct was required, or even appropriate, under the federal rules.

Mr. Steinberg also used his objections to push his theory that the lift gate was defective. For example, at one point he objected to a question about the original welding on the lift gate by saying: "Again, by this do you mean the actual physical welding as it was being done, counsel, or do you mean the remnants of it? Which do you mean?" Transcript of Morita Dep., pp. 82-83. And when counsel asked Mr. Morita whether he had "made any effort at all to physically compare the Maxon drawings that have been produced in this case to validate and verify that the subject gate was made in accordance with those drawings, Mr. Steinberg interjected "[i]n accordance or nonaccordance, counsel, which way do you mean it?" Transcript of Morita Dep., p. 84. Similarly, when counsel asked Mr. Morita whether he "could personally go out and locate a model RCM Maxon lift gate, take it into your laboratory, get out the design drawings and compare the

11

left cam and stop in terms of how this exemplar lift gate had
been manufactured," Mr. Steinberg objected by saying:

> Objection. The objection is this, if another vehicle
> is involved, that might be a proper question. But if
> you are now taking some other particular vehicle with
> another type of lift gate, that may or may not have any
> bearing. And at this point there is a lack of factual
> basis for your question.
>
> Now, at this point I am asking you to please form
> your question clearly and please don't use questions
> that have no basis in the evidence. I object for those
> reasons.

Transcript of Morita Dep., pp. 85-86.

And when counsel for Ryder asked Mr. Morita what role
corrosion plays in the degradation of a weld, Mr. Steinberg
objected on the ground that "[t]his particular form of question
is objectionable. It's objectionable because of the fact that it
is a misstatement of the particular opinions expressed by Mr.
Morita in his report. I object to the form of it for those
reasons." Transcript of Morita Dep., p. 91.

At one point, Mr. Steinberg interrupted the deposition,
saying that he wanted to ask Mr. Morita a question; he then
engaged in a whispered, off-the-record exchange with Mr. Morita,
in which he appears to have tried to refresh Mr. Morita's memory
- without any prompting - about some testimony Mr. Heriaud had
given at his deposition. See Transcript of Morita Dep., pp. 92-
94. This was inappropriate.

Additionally, when counsel for Ryder asked Mr. Morita to highlight on a diagram a particular part he was talking about, Mr. Steinberg instructed Mr. Morita not to mark documents unless and until defense counsel agreed that their experts would be permitted to mark drawings when asked to do so. *See* Transcript of Morita Dep., p. 32. And, based upon Mr. Steinberg's instruction, Mr. Morita refused to highlight the diagram as requested. *Id.* at 33-34. This was tantamount to an instruction not to answer, and such a move is appropriate under Rule 30 "only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." None of these applied here.

When counsel for Ryder attempted to ask Mr. Morita about the methods he used to reach the findings he included in his report, Mr. Steinberg objected time and time again. Ryder's counsel allowed the situation to deteriorate, in large part, because he was unable to ignore Mr. Steinberg, and, at one point, he asked Mr. Morita whether, for something in science to be valid, it had to be replicated. Mr. Steinberg again objected:

Again, will you please be specific? If you are talking about the underlying principles used that have to be replicated before the present principles and then after that make an analysis based upon the established principles? Which has to be replicated, that which exists before the principle is determined or that which is based upon the principle? Which do you mean, and

13

> will you please be specific instead of being so general
> and vague? Now. I can't make it more specific. Will
> you clarify the question?

Transcript of Morita Dep., p. 124. With that, counsel for Ryder

stopped the deposition and called the Court to seek some

assistance in reining in Mr. Steinberg.

Once apprised of the situation, the Court instructed Mr.

Steinberg that, if he had a legitimate objection, he should just

state it for the record, and then let Mr. Morita answer the

question asked. See Transcript of Morita Dep., pp. 128-129. The

lawyers tattled on each other, with Mr. Fuoco telling the Court

that Mr. Steinberg's so-called objections were "narrative" and

"suggestive" - a fact that was certainly borne out by the

deposition transcript to that point, and Mr. Steinberg telling

the Court that Mr. Fuoco was himself impeding the progress of the

deposition by asking questions that were "vague and general" and

"susceptible of multiple answers." Transcript at 129. After

hearing from the lawyers, the Court instructed Mr. Steinberg that

it would not tolerate speaking objections, and that objections

designed to coach or suggest were similarly improper. The Court

admonished Mr. Steinberg that the defendants had a right to

defend against the Heriauds' allegations, and that that right

included the ability to ask probative questions of their

liability expert without Mr. Steinberg impeding that process.

14

Transcript of Morita Dep., pp. 138-141.

Yet, in the wake of the Court's intervention, little

changed. A short time after the call with the Court, Mr.

Steinberg objected to a question with

[o]bjection. This is repetitive. He has previously
testified as to a basis for that position that he's
testified to. How many times are you going to attempt
to get this, okay? It's vague, vague and indefinite
and repetitive.

Transcript of Morita Dep., p. 145. And just a few questions

later, he erupted with the following:

All right. Now, this is the umpteenth time that
this argumentative question has been put to this
witness in addition to its repetitive nature. Now, I'm
not asking these to be blue tabbed, but I am asking the
court reporter to make sure that there is a record of
this objection as to each of the times that this
question has been asked and answer made and objection
made.

Transcript of Morita Dep., pp. 146. Then, after the witness

asked the court reporter to read back the question, Mr. Steinberg

added:

Excuse me, I want this stated on the record, that
allegations in this case involve product defect. That
is what we are dealing with. And the materiality and
relevance of repetitive questions that have been asked,
okay, aren't directed to this issue. Moreover, that
additional objection has a basis for my objection. In
other words, it exceeds the scope of the issues in
addition to being repetitive.

Transcript of Morita Dep., pp. 146-147.

Mr. Steinberg also continued his attempts to coach or

15

suggest testimony to Mr. Morita. For example, when Mr. Fuoco
asked Mr. Morita how, if he didn't pinpoint the location of a
crack, he could ever identify that crack, Mr. Steinberg
interrupted by saying "[a]gain, your question, just for
clarification, is only limited to the defect of the crack as
opposed to any others – is that correct?" Transcript of Morita
Dep., p. 162. And, when Mr. Fuoco asked Mr. Morita to identify
where on the bracket the weld was that he said had been broken,
Mr. Steinberg interjected "[o]bjection, misstates his evidence.
He had indicated that it had deteriorated in his report and/or
cracked." Transcript of Morita Dep., p. 165.

In short, even after the Court instructed him to refrain
from making speaking objections and to refrain from being
suggestive with the witness, Mr. Steinberg continued to do both.
Thus, in addition to violating Rule 30, Mr. Steinberg also
disobeyed an explicit instruction from the Court.

Mr. Steinberg dismissively characterizes his behavior as
being "pleonastic," see brief at 3, suggesting that he was merely
being verbose or redundant in his objections. But his behavior
was much more egregious and unprofessional; even a dry reading of
the deposition transcript compels the conclusion that Mr.
Steinberg was, at best, trying to obstruct his adversaries'
ability to obtain answers to their questions, and, at worst,

trying to coach his expert to answer – or not answer – questions as Mr. Steinberg saw fit. His behavior violates every rule of discovery that broaches the subject.

Mr. Steinberg suggests that his behavior is somehow acceptable because defense counsel have dragged their feet or been less than cooperative and forthcoming at times during discovery. But this is not a playground or a boxing ring where one feels out his opponent; this is a federal court, and, given that, the parties are expected to conduct themselves with decorum and professionalism. The Court rejects Mr. Steinberg's apparent analogy of discovery being akin to a boxing match where the opponents learn what they can and cannot get away with. See brief at 19. If Mr. Steinberg believed the defendants or their lawyers had conducted themselves inappropriately, he should have moved for sanctions; their alleged bad behavior does not give him the right to sling some mud of his own.

And, in fact, the deposition transcripts Mr. Steinberg submitted do not, as he argues, show that counsel for Ryder behaved as badly as he did. On the contrary, according to those transcripts, Mr. Fuoco objected to questions as contemplated in the federal rules; that is, he objected and concisely stated the basis for his objection; he did not make speaking objections, he did not use his objections to coach or suggest things to the

witnesses.

Not only did Mr. Steinberg behave badly, but he also encouraged his expert to behave badly; apparently buoyed by Mr. Steinberg's tone and attitude, Mr. Morita became, during the deposition, as obstreperous and hostile as Mr. Steinberg. As already mentioned, Mr. Morita flatly refused to highlight a part on a diagram when asked to do so, Transcript of Morita Dep. at 33; he criticized counsel's questions as "extremely poorly worded," and "unintelligible," and he called counsel "silly" for asking one question, *see* Transcript of Morita Dep. at 37, 123, 158; he refused to answer questions, noting that they had been "asked and answered," Transcript of Morita Dep., p. 123; he refused to answer another question on his own, referring counsel instead to his report, Transcript of Morita Dep., pp. 162-163. These are just a few examples; a reading of the entire transcript is necessary to give full flavor to the condescension and unprofessionalism exhibited by Mr. Morita.

Mr. Steinberg's conduct violated the Federal Rules of Civil Procedure, and it also violated this Court's explicit directives. He has demonstrated that he is incapable or unwilling to abide by the rules of the Court or to rein in his conduct, to behave as a professional, in a civil manner. Sanctions are appropriate.

But what sanction is appropriate? The defendants have asked

18

the Court, alternatively, to bar Mr. Morita from testifying, to order the re-deposition of Mr. Morita at Mr. Steinberg's expense, and to impose a monetary sanction on Mr. Steinberg and the Heriauds. A district court is bound to impose a sanction that is proportionate to the offending party's discovery violation; it is not, however, required to impose the least drastic sanction available. *See Wilson v. Sundstrand*, Nos. 99 C 6944, 99 C 6946, 2003 WL 21961359, at *14 (N.D. Ill. Aug. 18, 2003)(citing *Johnson v, J.B. Hunt Transport, Inc.*, 280 F.3d 1125, 1132 (7th Cir. 2002); *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 673 (7th Cir. 1996)). Here, Mr. Steinberg prevented the defendants from obtaining the discovery they needed - and were entitled to - from the plaintiffs' liability expert; they were utterly unable, because of his conduct, and because of the conduct of the expert himself, who clearly took his cues from Mr. Steinberg, to investigate, explore or probe Mr. Morita's findings and conclusions. The deposition transcript as it now stands is worthless.

What's worse, Mr. Steinberg so poisoned the atmosphere in that room that it is unlikely that the defendants could ever build a rapport with Mr. Morita; it is unlikely that he would ever be forthcoming and cooperative with the defendants' attorneys. And so the Court is unwilling to simply order Mr.

Morita to sit once again for deposition. Instead, given Mr. Steinberg's conduct and the consequences thereof, the Court finds that it is appropriate to bar Mr. Morita from testifying at trial.

The Court recognizes that the decision to bar a witness should not be lightly made; in many cases, the decision is made only after repeated failures to heed instructions or only after a pattern of misconduct has emerged. For example, in *Johnson v. J.B. Hunt Transport, Inc.*, 280 F.3d 1125 (7th Cir. 2002), the court decided to bar two witnesses after the defendant repeatedly failed to produce them for deposition. But the situation presented here is actually worse in at least one respect: if Mr. Steinberg had simply failed to produce Mr. Morita, he would actually have saved the defendants some money; instead, he produced the witness, causing the defendants to spend money to prepare for and attend the deposition, then he prevented them from accomplishing anything once they got there. Because of Mr. Steinberg's and Mr. Morita's conduct, the defendants' time, effort, and money were utterly wasted. Accordingly, the Court finds that an order barring Mr. Morita from testifying is warranted. Additionally, because Mr. Steinberg's conduct was so out-of-line, the Court will order him to reimburse the defendants for the fees and costs they incurred to have their attorneys

attend Mr. Morita's deposition.

Although the sanction imposed today packs a punch, the Court is "not required to fire a warning shot." *Hal Commodity Cycles Management Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir. 1987), *quoted in Parker v. Freightliner Corp.*, 940 F.2d 1019, 1025 (7th Cir. 1991). At Mr. Morita's deposition, Mr. Steinberg was unprofessional, obstreperous, and obstructive; his witness followed his lead and similarly impeded the discovery process. Frankly, the Court is shocked at their behavior; it is unacceptable. As one who has served as an expert witness many times, Mr. Morita should have known that this is not how things are done in federal court. And, as an attorney, Mr. Steinberg should certainly have known better. Given his behavior, his disregard for the federal rules and for this Court's order, the Court finds that the sanctions imposed today are proportionate and just.

## Conclusion

For the reasons explained above, the Court grants Ryder's motion for sanctions [#133], Morgan's motion for sanctions [#135], and Maxon Lift's motion for sanctions [#137]. As a sanction for the behavior of Mr. Steinberg and Mr. Morita at the May 17, 2005 deposition, the Court bars Mr. Morita from testifying at trial, and orders Mr. Steinberg to reimburse the

defendants for the attorneys' fees and costs they incurred to have their attorneys attend that disastrous deposition. The Court denies the plaintiffs' counter-motion for sanctions [#146].

Dated: September 8, 2005

ENTER:

Arlande Keys

ARLANDER KEYS
United States Magistrate Judge