IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. HERIAUD and<br>PAT HERIAUD,<br><br>Plaintiffs<br><br>v.<br><br>RYDER TRANSPORTATION<br>SERVICES, RYDER TRUCK RENTAL,<br>INC., MORGAN CORPORATION and<br>THE MAXON LIFT CORPORATION,<br><br>Defendants. | No. 03 C 0289<br><br>Paul E. Plunkett, Senior Judge |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Ryder Transportation Services, Ryder Truck Rental, Inc. and Maxon Lift Corporation's, petitions to set the fees and costs associated with the sanctions order entered on September 8, 2005 by Magistrate Judge Keys and affirmed in part by this Court on October 6, 2005. Having already determined that fees and costs are appropriate, see Minute Order, No. 03 C 0289 (N.D. Ill. Oct. 6, 2005), for the reasons set forth below, the Court awards attorneys fees of $7,873.50 to the Ryder Defendants and $2,340.00 to Maxon Lift Corporation.

### Background

On January 14, 2003, Defendant Morgan Corporation ("Morgan") removed the present products liability suit, initially filed in the Circuit Court of Cook County on December 12, 2002, by

Plaintiffs Thomas J. Heriaud and Pat Heriaud, to the United States District Court for the Northern District of Illinois, Eastern Division. In connection with this suit, Defendants attempted to depose Plaintiffs' engineering expert, Douglas Morita ("Morita"), on May 17, 2005. However, due to the obfuscating, obstructing and generally capricious behavior of Plaintiffs' counsel, Bradley Steinberg ("Mr. Steinberg"), frustrated defense counsel ended the deposition without completing their examination of Morita.[1]

As a result of the difficulties which arose during the Morita deposition, Defendants Ryder Transportation Services, Ryder Truck Rental, Inc. (collectively "Ryder"), Morgan and the Maxon Lift Corporation ("Maxon Lift"), filed separate motions seeking sanctions against Steinberg pursuant to Rules 20(d)(3) and 37(b)(2)(E) of the Federal Rules of Civil Procedure as well as an order barring Morita from testifying at trial. After extensive briefing, which also included a cross-motion for sanctions filed by Plaintiffs, Magistrate Judge Keys granted Defendants' motions for sanctions, thereby barring Morita from testifying at trial and ordering Mr. Steinberg "to reimburse defendants for their attorneys' fees and costs they incurred to have their attorneys attend that disastrous deposition." Keys Mem. Op. & Order, No. 03 C 0289 at 21-22 (N.D. Ill. Sept. 8, 2005). Judge Keys also denied Plaintiffs' counter-motion for sanctions and orally refused to let Plaintiffs appoint a substitute expert. *Id.*

Seeking to have this Court reverse Magistrate Judge Keys' September 8, 2005 Order, on September 19, 2005, Plaintiffs filed an eighteen page motion (supplemented by 2 voluminous

---

[1] For a thorough examination of the issues arising in the Morita Deposition resulting in Defendants' sanctions motions, see generally Magistrate Judge Keys' Memorandum Opinion and Order of September 8, 2005.

appendixes) objecting to that Order, generally characterizing it as "too harsh" and "draconian."[2] *See generally* Pls.' Objections. In responding to Plaintiffs' objections, Ryder did so as to four issues: (1) the barring of Plaintiffs' expert, Morita; (2) the denial of Plaintiffs' request to name a replacement expert; (3) the imposition of monetary sanctions against Mr. Steinberg personally; and (4) the denial of Plaintiffs' counter-motion for sanctions. Ryder's Resp. to Pls.' Objections at 3. Yet, after reviewing the relevant briefs and transcripts, and after conducting a hearing, this Court affirmed Magistrate Judge Keys as to all issues raised save his oral order barring a substitute expert. *See* Minute Order, No. 03 C 0289 (N.D. Ill. Oct. 6, 2005). Additionally, this Court also assessed the costs of appealing against Plaintiffs. *See id.*

On October 20, 2005, the Ryder Defendants moved to set the amount of the sanctions award against Steinberg. Thereafter, on November 23, 2005, Plaintiffs responded not only to Ryder's fee petition, but also to Maxon Lift, though, at the time Maxon Lift had only submitted a letter requesting payment and not filed a motion with the Court. However, on January 3, 2006, Maxon Lift submitted its own motion. With this background in mind, the Court turns to the issues presently before it.

## Analysis

"District courts possess wide latitude in fashioning appropriate sanctions and evaluating the reasonableness of the attorneys' fees requested." *Johnson v. Kakvand*, 192 F.3d 656, 661 (7th Cir. 1999). "The most useful starting point for determining the amount of a reasonable fee is the number

---

[2] Plaintiffs filed an emergency motion for leave to file a brief in excess of the limit imposed by Local Rule 7.1, which Judge Amy St. Eve granted on September 19, 2005.

of hours expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424 (1983). As the parties seeking the fee award, Ryder and Maxon Lift each "bear[] the burden of proving the reasonableness of the hours and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999).

## I.     Ryder's Hours and Appropriate Billing Rates.

Ryder seeks reimbursement for attorneys' fees and costs associated with three broad tasks: (1) the fees and costs incurred in preparing for and attending the Morita deposition; (2) the fees and costs associated with their motion for sanctions before Magistrate Judge Keys; and (3) the fees and costs attributable to defending against Plaintiffs' appeal from the September 8, 2005 Order. *See* Ryder Sanctions Fee Pet. ¶¶ 7-8, 11. Each request will be examined in turn.

### A.     *Fees And Expenses Associated With The Morita Deposition.*

In its fee petition, Ryder seeks $1,749.00 in attorneys' fees and $1,623.07 in expenses associated with both the actual attendance of the Morita deposition as well as with the time spent preparing for that deposition. *See* Ryder Sanctions Fee Pet. ¶ 7. Alternatively, Plaintiffs contend that Magistrate Judge Keys' order limits reimbursement simply to the time Ryder counsel spent examining Morita, *i.e.*, six hours, and challenge Ryder's request for preparatory fees and costs on the ground that they are beyond the scope of the reimbursement ordered on September 8, 2005. Pls.' Resp. Ryder Sanctions Fee Pet. at 1. As a result, they argue preparatory fees and costs are not reimbursable as they would have been incurred regardless of the Morita deposition's premature conclusion.

In connection with their position, Plaintiffs rely on *Franzen v. Ellis Corp.*, No. 03 C 0641, 2004 WL 421954, at *1 (N.D. Ill. Feb. 11, 2004), to support their argument "that fees that a defendant would have incurred regardless of plaintiff's counsel's conduct are not recoverable." Pls.'Resp. Ryder Sanctions Fee Pet. at 3. In *Franzen*, the district court granted the defendant attorneys' fees and costs incurred as a result of the plaintiff's failure to appear at two depositions. *Franzen*, 2004 WL 421954, at *1. While the court did not permit recovery of attorneys' fees and costs that would have been incurred "irregardless of any sanctionable conduct," it is important to note that the *Franzen* court did not contemplate ordering such fees and costs to be reimbursed prior to fixing the fees and costs in its opinion. *See generally id.* As such, the present case is factually distinguishable from *Franzen* because preparatory fees and costs were clearly within the reimbursement considered and ultimately ordered by Magistrate Judge Keys. In pertinent part, Magistrate Judge Keys noted:

> if Mr. Steinberg had simply failed to produce Mr. Morita, he would actually have saved the defendants some money; instead, he produced the witness, *causing the defendants to spend money to prepare for* and attend the deposition, then he prevented them from accomplishing anything once they got there. Because of Mr. Steinberg's and Mr. Morita's conduct, the defendants' time, effort, and money were utterly wasted.... Additionally, because Mr. Steinberg's conduct was so out-of-line, the Court will order him to reimburse the defendants for the fees and costs they incurred to have their attorneys attend Mr. Morita's deposition.

Mem. Op. & Order of 9/8/2005 at 20-21 (emphasis added). Moreover, in light of the fact that Mr. Morita has been barred from testifying as an expert witness in this matter, it is questionable whether the preparations conducted would otherwise have been incurred as that preparation appears to have been specific to deposing Morita. As a result, Ryder can be reimbursed for the preparatory fees and costs incurred in connection with the Morita deposition.

Having determined that preparatory fees and costs are within the scope of the September 8, 2005 Order, the Court turns to the issue of whether the time expended in connection with the deposition was reasonable. As the party requesting reimbursement of attorneys' fees, counsel for Ryder is expected to exercise "billing judgment." "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Spegon*, 175 F.3d at 552 (citing *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir.1998)). "In exercising 'billing judgment,' the Supreme Court emphasized that counsel for the [fee seeking party] should exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. *Id.* (citing *Hensley*, 461 U.S. at 434).

In connection with its fee request, Ryder has provided the Court with its counsels' time sheets indicating the time spent on various tasks for which Ryder now seeks reimbursement. According to its fee petition and corresponding time records, Ryder asserts that counsel Steven Fuoco spent 10.6 hours total in preparing for and attending the deposition, namely 4.5 hours preparing for the deposition by reviewing Plaintiffs' Rule 26 disclosure as well as reviewing material for use in cross-examining Morita, six hours attending the deposition and a tenth of an hour drafting a letter to the court reporter in order to preserve an audiotape copy of the deposition. Because the May 18, 2005 letter to the court reporter should have been completed by clerical staff rather than counsel, that entry will be deleted. *See, e.g., Spegon*, 175 F.3d at 553 (holding that district courts "should disallow time spent on what are essentially 'clerical' or secretarial tasks"); *Newsome v. McCabe*, 96 C 7680, 2002 WL 1008472, at *3 (N.D. Ill. May 17, 2002). As a result, because the Court finds that the four-and-

a-half hours spent in preparation for a six hour deposition is reasonable, 10.5 hours are thus reimbursable.

Further, Ryder seeks to recover $1,623.07 in "associated expenses" connected with the ill-fated deposition. However, while costs were certainly within the scope of Magistrate Judge Keys' Order, Ryder has neither explained nor sufficiently documented which costs were incurred in preparing for and attending the Morita deposition. Indeed, the only cost which might have been incurred in preparation for the Morita deposition is a $487.90 invoice dated March 31, 2005, for photocopies. While Ryder's counsel was not required to maintain a list of every sheet of paper photocopied, the Court cannot make a reasonableness determination without such minimal information as to what was copied and why.[3] *See, e.g., Robinson v. City of Harvey*, No. 99 C 3696, 2004 WL 2033714, at *8 (N.D. Ill. Aug. 13, 2004) (declining to award photocopy costs following insufficient support of the fee request). Therefore, absent such information, Ryder may not recover said photocopy expenses. Moreover, due to the absence of any explanation for the remaining $1,135.17 claimed as costs, they are also unrecoverable.

### B. *Fees and Costs Associated With Ryder's Motion for Sanctions.*

Next, Ryder seeks reimbursement for attorneys' fees of $13,121.00, representing 80.2 hours of work by three attorneys - a figure approximately eight times in excess of the 10.6 hours counsel for Ryder spent preparing for and attending the Morita deposition - as well as $1,228.55 in related

---

[3]Counsel for Plaintiffs' note that the $487.90 expense was to obtain Morita's file. Pls.' Sanctions Fee Pet. Resp. at 4. Nevertheless, and as noted above, Ryder bears the burden of providing information as to the reasonableness of its counsels' charges, a burden it has not met.

costs. Because this Court finds that the attorneys' fees and costs incurred in connection with Ryder's Motion for Sanctions were not within the scope of Magistrate Judge Keys' September 8, 2005 Order, or within the scope of this Courts' October 6, 2005 Order, the reimbursement amounts of those fees and costs need not be assessed as they are not reimbursable.[4] *See* Mem. Op. & Order, No. 03 C 0289 (N.D. Ill. Sept. 8, 2005); Minute Order, No. 03 C 0289 (N.D. Ill. Sept. 8, 2005); Minute Order, No. 03 C 0289 (N.D. Ill. Oct. 6, 2005). *See also Christman v. Brauvin Realty Advisors, Inc.*, No. 96 C 6025, 2001 WL 1403024, at *3 (N.D. Ill. Nov. 9, 2001) (denying fees and expenses that were beyond the scope of recoverable costs permitted by a prior court order).

### C. *Fees and Costs Associated With The Appeal of the September 8, 2005 Sanction Order.*

Finally, Ryder seeks reimbursement for attorneys' fees of $10,254.05 associated with defending against Plaintiffs' appeal of Magistrate Judge Keys' September 8, 2005 sanction order. According to Ryder, counsel Steven Fuoco and Lewis Bricker expended 47.6 hours in connection with the appeal, assisted by Brian Flood for 1.6 hours and Daniel Derechin for 8.8 hours.[5] Ryder Sanctions Fee. Pet. ¶ 11. In turn, Plaintiffs suggest that Ryder's demands are excessive and unreasonable in light of the issues raised by Plaintiffs' appeal of the September 8, 2005 Order. Pls.' Resp. Ryder Sanctions Fee Pet. at 8.

---

[4] Indeed, Magistrate Judge Keys' Memorandum Opinion and Order is silent as to an award of attorneys' fees and costs incurred in connection with the Motion for Sanctions. *See* Mem. Op. & Order, No. 03 C 0289 (N.D. Ill. Sept. 8, 2005).

[5] Calculating the hours provided by Ryder in its fee petition at the discounted rate, the attorneys' fees sought by Ryder equals $9,362.00, not $10,254.05.

While a majority of the hours involved appear reasonable, there are a number of entries which do not and will need to be reduced prior to any reimbursement. First, counsel seek reimbursement of 2.4 hours of Steven Fuoco's and Lewis Bricker's time, entered after Magistrate Judge Keys' Order was issued on September 8, 2005, but prior to the date Plaintiffs filed their objections to that order. Because this time was not incurred in connection with preparing for or conducting the deposition, or defending against Plaintiffs' appeal, it is not reimbursable. Second, a number of the entries reflect 1.5 hours of staffing redundancies by Mr. Fuoco or Mr. Bricker and will thus be deleted.[6] Third, several entries reflect 0.9 hours of work by Mr. Fuoco or Mr. Bricker that could have been accomplished with the help of an assistant rather than an attorney at an attorney's fee, as a result, those entries will be deleted.[7] Fourth, the September 22, 2005 entry, involving a 0.2 hour meeting between Mr. Fuoco and Mr. Bricker, will be deleted for vagueness as to the subject matter of the meeting. Moreover, the September 2, 2005 entry by Mr. Fuoco, reflecting his apparent problems with e-filing system cannot properly be attributed as arising from Plaintiffs' appeal to Magistrate Judge Keys' Order and will also be deleted. Fifth, research entries reflecting 4.2 hours of inefficiencies resulting from Daniel Derechin's research into previously researched issues will be deleted.[8] Finally, the Court cannot reasonably award Ryder attorneys' fees

---

[6] Those entries are: 9/20/05 (Fuoco review of Plaintiffs' emergency motion), 9/20/05 (Fuoco conference with Brian Flood), 9/20/05 (Fuoco review of minute order), 9/22/05 (Bricker review of electronic notice of emergency motion and review of Judge St. Eve's minute order), (Bricker review minute order), 9/28/05 (two entries by Bricker for teleconference regarding the Court's request for case law)

[7] Those entries are: 9/28/05 (Bricker entry for letter to counsel), 9/29/05 (Fuoco entry for e-filing difficulties) and 10/4/05 (Fuoco entry for letter to district court law clerk).

[8] Those entries are: 9/28/05 (research involving sanctions as a remedy for failure to follow court order), 9/28/05 (research involving magistrate control over pretrial issues), 9/28/05 (analysis

reflecting 7.1 hours of research conducted on October 3, 2005, by Mr. Fuoco at the Court's request nor the 0.3 hours he expended on October 4, 2005 in drafting a letter reflecting that research. Accordingly, because the Court finds as reasonable 34.6 hours expended by Steven Fuoco and Lewis Bricker, 1.6 hours expended by Flood and 4.6 hours expended by Daniel Derechin, they are reimbursable.

Plaintiffs contend that the attorneys' fees incurred in connection this Court's reversal of the Magistrate's denial of Plaintiffs' request to name a new expert should be proportionately reduced by one-quarter because Ryder did not succeed on appeal as to this issue, which represented one of four issues raised by Plaintiffs in their appeal from Magistrate Judge Keys' Order. Specifically, Plaintiffs contend that any fee award as to the appeal "should result in a proportionate reduction on the order of one-fourth" as the "argument constituted one-fourth of the substantive brief." Pls.'Resp. Ryder Sanctions Fee Pet. at 10. In connection with their position, Plaintiffs cite to *Hensley v. Eckerhart*, 461 U.S. 424 (1983), in an attempt to support their position that "a petitioner is entitled only to those fees expended on and related to those claims on which the petitioner succeeded on appeal." Pls.' Resp. Ryder Sanctions Fee Pet. at 9-10 (citing *Hensley*, 461 U.S. at 439-40). However, the Supreme Court in *Hensley* expressly rejected use of the "proportionate reduction" Plaintiffs now argue for in their Response.

In *Hensley*, the plaintiffs brought an action pursuant to 42 U.S.C. § 1988 on behalf of all persons "involuntarily confined" at a Missouri state-run hospital, alleging various constitutional

---

of case law regarding excluding expert testimony for disregarding court orders), 9/28/05 (research involving case law regarding Rule 37(b) sanctions) and 9/28/05 (research regarding conduct giving rise to sanctions).

violations which resulted in allegedly inadequate treatment and conditions at the hospital. *Hensley*, 461 U.S. at 426. After succeeding at trial on five of six alleged constitutional violations, the plaintiffs sought attorneys' fees. *Id.* at 428. The district court awarded attorneys' fees but refused "to eliminate from the award hours spent on unsuccessful claims . . . based strictly on a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id.* While the Supreme Court vacated the decision of the district court and remanded for further proceedings, the Court affirmed the district court's rejection of "a mathematical approach" to reduce any fee award. Specifically, the Court noted that "[s]uch a ratio provides little aid in determining what is a reasonable fee." *Id.* at 435 n.11.

As noted above, Plaintiffs argue that this Court should reduce any award in connection with the appeal by one-quarter, based on the fact that Ryder did not succeed on one of the four issues presented to this Court. Just as the district court in *Hensley* did not mathematically reduce a fee award based upon a simple application of a ratio, an approach met with approval by the Supreme Court, this Court declines to do so as well. Any mechanical reduction based on Ryder's failure as to the issue of whether to bar Plaintiffs from naming a replacement expert would be inappropriate due to its interrelatedness with the issue of whether to bar Plaintiff's particular expert, Morita. *See id.* at 438 (noting that "[g]iven the interrelated nature of the facts and legal theories in this case, the District Court did not err in refusing to apportion the fee award mechanically on the basis of [the fee seeking party's] success or failure on particular issues"). Furthermore, to the extent that the Supreme Court in *Hensley* reversed the district court, it did so on the ground that the district court "did not properly consider the relationship between the extent of success and the amount of fee award." *Id.* at 438. In the present case, however, the dollar amount this Court will award is quite reasonable,

particularly in light of its relatively small size in comparison to the $133,332.25 the district court awarded the *Hensley* plaintiffs in January 1981. *Id.* at 428.

Next, turning to the issue of costs incurred in defending against Plaintiffs' objections, while Ryder's costs incurred in connection with Plaintiffs' appeal were within the scope of this Court's October 6, 2005 Order, Ryder has not pled a reimbursement amount for costs in its fee petition, thus they will not be awarded. Moreover, to the extent Ryder submitted documentation of costs incurred during the period between Magistrate Judge Keys' Order and this Court's October 6, 2005, Ryder has neither explained nor sufficiently documented which costs were incurred in defending against Plaintiffs' objections to Magistrate Judge Keys' Order. Instead, Ryder merely attached records spanning from June 11, 2005 to September 13, 2005, reflecting costs advanced for expenditures such as courier fees, faxes and copying. However, as previously noted, the Court cannot make a reasonableness determination without such minimal information as to what was copied and why, what was faxed and why, what was sent by courier and why.[9] *See, e.g., Robinson v. City of Harvey*, No. 99 C 3696, 2004 WL 2033714, at *8 (N.D. Ill. Aug. 13, 2004). Therefore, absent such information, Ryder will not be awarded costs expended in connection with the appeal expenses.

### D. *Ryder's Applicable Billing Rates.*

Having determined the number of hours reimbursable to Ryder in this matter, the Court must determine the appropriate billing rates to be used in determining the lodestar amount. According to

---

[9] Counsel for Plaintiffs' note that the $487.90 expense was to obtain Morita's file. Pls.' Resp. Ryder Sanctions Fee Pet. at 4. Nevertheless, and as noted above, Ryder bears the burden of providing information as to the reasonableness of its counsels' charges, a burden it has not met.

Ryder's fee petition, the defense of the Ryder defendants in the present litigation "is being done at a substantially discounted rate . . . due to Ryder's continuing engagement" of counsel in what appears to be an insurance coverage matter. Ryder Sanctions Fee Pet. ¶ 6. As such, counsel urge this Court to calculate any fees awarded by utilizing their alleged "market rates" rather than the discounted rate they are actually billing their clients. *Id.* ¶¶ 13-14. However, the Court declines Ryder's invitation to award fees at the higher rate, as Ryder has not met its burden of proving its counsels' market rates.

"Generally, when calculating attorney's fees, a district court will determine a lodestar amount by multiplying the reasonable number of hours worked by the market rate." *Uphoff v. Elegant Bath, Ltd.*, 176 F.3d 399, 407 (7th Cir. 1999) (internal quotation omitted). "The market rate is the rate that lawyers of similar ability and experience in the community normally charge for their paying clients for the type of work in question" and an "attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." *Id. See also Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993) ("When the lawyers sell their time in the market, the market provides the starting point: the lawyer's hourly rate."). Importantly, "[t]he burden of proving the market rate is on the party seeking the fee award." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). Thus, as the fee applicant, Ryder can meet its initial burden in two ways: "either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards the attorney has received in similar cases." *Batt v. Micro Warehouse, Inc.*, 241 F.3d 891, 894 (7th Cir. 2001).

In support of Ryder's fee petition, counsel for Ryder, Steven Fuoco, submitted his own affidavit, attesting that his and Lewis Bricker's "prevailing rates" are $250 per hour, that associates

Daniel Derechin's and Brian Flood's rates are $190 per hour and that associate Timothy Epstein's rate is $150 per hour. Ryder also attached biographies of each attorney in an attempt for this Court to justify those rates. However, Mr. Fuoco's self-serving affidavit and the attached biographies are insufficient evidence for this Court to award a higher rate than is actually being charged in this case. Indeed, to justify their fee awards, counsel for Ryder should have submitted affidavits from attorneys other than those seeking the fee award or produce evidence of fee awards in similar cases in order to establish a market rate for their services. *See Batt*, 241 F.3d at 894. Accordingly, because Ryder has not submitted sufficient evidence to justify an award at rates higher than those actually being charged in this case, Ryder is unable to shift the burden to Plaintiffs "to demonstrate why a lower rate should be awarded." *Small v. Richard Wolf Med. Instruments Corp.*, 264 F.3d 702, 707 (7th Cir. 2001). As a result, the Court finds that the "discounted billing rates" of $165 per hour for Steven Fuoco and Lewis Bricker, $145 per hour for Daniel Derechin and Brian Flood, and $125 per hour for Timothy Epstein as reasonable, particularly in light of Plaintiffs' failure to address the reasonableness of the fees charged or provide any evidence to the contrary. *See Pressley v. Haeger*, 977 F.2d 295, 299 (7th Cir. 1992) (requiring the district court to award the attorney's billing rate where the party opposing the fee award failed to submit contrary evidence as to the issue of fees); *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996) (observing that in situations where the fee applicant has met its initial burden, the burden shifts to the other party to "present evidence establishing a good reason why a lower rate is essential" and noting that the "failure to do so is essentially a concession that the attorney's billing rate is reasonable and should be awarded").

## II. Maxon Lift's Hours and Appropriate Billing Rates.

Like Ryder, Maxon seeks reimbursement for attorneys' fees and costs incurred in preparing for and attending the Morita deposition. Additionally, and unlike Ryder, Maxon Lift also argues that this Court should also award them the fees and costs incurred in preparing its present motion to enforce the sanctions order. *See generally* Maxon Lift Sanctions Fee Pet.

### A. *Fees And Expenses Associated With The Morita Deposition*.

In its fee petition, Maxon Lift seeks $4,248.00 in attorneys' fees and $487.90 in expenses. *See id.* at 1. In response, Plaintiffs again argue that Magistrate Judge Keys' order limits reimbursement solely for the time Maxon Lift counsel spent examining Morita, i.e. 4 hours and 25 minutes. Pls.' Maxon Lift Sanctions Fee Pet. Resp. at 3. Similarly, Plaintiffs also argue that preparation time for that deposition was also in excess of the reimbursement ordered on September 8, 2005. *Id.* However, as noted *supra* at 4-5, preparatory fees and expenses were clearly within the reimbursement considered and ultimately ordered by Magistrate Judge Keys. Thus, the Court turns to the issue of whether Maxon Lift's time expended in connection with the deposition was reasonable.

Like counsel for Ryder, Maxon Lift is expected to exercise billing judgment. In connection with its fee petition, Maxon Lift has provided this Court with its counsels' time sheets. Counsels' time sheets reflect 11 entries totaling 16.5 hours of time expended in connection with and in preparation for the Morita deposition. However, of these 11 entries, 7 of these entries are "lumped"

as they contain a description of more than one task per entry.[10] As this Court recently noted, "lumping prevents the Court from determining whether that time was reasonably spent." *In re Subpoenas Issued to Danze, Inc.*, No. 05 C 4538, 2006 WL 211942, at *3 (N.D. Ill. Jan. 18, 2006). Though some courts have considered lumped entries as non-compensable, see, e.g., *In re Wiedau's Inc.*, 78 B.R. 904, 908 (Bankr. S.D. Ill. 1987), this Court declines such an approach and instead reduces the lumped entries by 50%. Moreover, with respect to a particular lumped entry, the May 17, 2005 attendance at the deposition and "conferring with Howe re same," instead of reducing the 6.5 hour entry by half, the Court limits recovery to 5.25 hours, the time actually spent at the deposition. Thus, the Court finds that 0.2 hours of Jean Watt's time and 11.6 hours of Jason Rosenthal's time as compensable.

Furthermore, Maxon Lift seeks reimbursement of $487.90 in expenses connected with Morita's deposition. As noted above, costs were within the scope of Magistrate Judge Keys' Order, but again, without any information as to what was copied and why, this Court cannot make a reasonableness determination. *See supra* at 6-7. Maxon Lift refers to the charges simply as charges for copies of Morita's documents, noting that the "invoice contains no breakdown of the copy charges." While the invoice did not need to explain the copy charges, Maxon Lift needed to and did not. Thus, absent such information, Maxon may not recover said photocopy expenses.

---

[10] Those entries are: 2/1/05 (Watt review of additional research materials; preparation of packet of materials re Morita for Rosenthal); 3/25/05; 3/30/05; 4/15/05; 5/9/05; 5/16/05 and; 5/17/05.

## B. *Maxon Lift's Applicable Billing Rates.*

Having determined the number of hours reimbursable to Maxon Lift in this matter, the Court must also determine the appropriate billing rates to be used in determining the lodestar amount. According to Maxon Lift's fee petition, all of its "invoices have been paid, which creates a strong implication that the fees are reasonable." Maxon Lift Sanctions Fee Pet. at 4 (citing *Medcom Holding Co. v Baxter Travenol Labs., Inc.*, 200 F.3d 518, 520 (7th Cir. 2000)). As noted, fee applicants can prove its market rate in two ways: "either by submitting affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work or by submitting evidence of fee awards *the attorney* has received in similar cases." *Batt*, 41 F.3d at 894. (emphasis added).

Here, Maxon Lift proceeds under the second option by attempting to submit evidence of fee awards received in similar cases. Such evidence comes in the form of two judicial opinions granting Maxon Lift's law firm, Schopf & Weiss LLP, its requested attorneys' fees. However, these opinions are not very helpful for determining whether *Jason Rosenthal's* current rate of $260 per hour is reasonable. In the first opinion submitted, *Carter v. Commonwealth Edison*, No. 98 L 13041/93 L 12432 (Apr. 8, 2003) (Elrod, J.), while the trial court notes that *Schopf & Weiss LLP's* hourly rates, were "well within the range of rates charged by comparable Chicago firms," Judge Elrod does not discuss whether Jason Rosenthal's fees in particular were reasonable. Instead, Judge Elrod's opinion found noted that the average hourly rate for Peter Baugher, a partner at Schopf & Weiss LLP, for the years 1997-98 ranged from $245 to $265 per hour, and that Paula Render's rates ranged from $90 to $105 dollars, with the average hourly attorney rate at $225 per hour. *Carter, supra* at 7. This infirmity also exists with respect to the other decision submitted by Maxon Lift, *Christiana Indus.,*

*LLC v. Christiana Indus. Corp.*, No. 1-02-3648 (Ill. App. Ct. July 22, 2003), which provides even less evidence regarding Jason Rosenthal's rate than the first decision.

However, while the evidence provided does not discuss Mr. Rosenthal's particular rate, it does provide rate information for those who work with him, which this Court may consider. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1312 (7th Cir.1996) (stating that "[i]f a court chooses to look to the next best evidence of what similarly situated attorneys charge, there is no reason that it should refuse consideration of those who practice in conjunction with the attorney at issue."). Accordingly, rather than award Mr. Rosenthal the rate he seeks, the Court finds that $200 per hour is a more appropriate rate based on the evidence submitted. Though the *Carter* opinion is nearly three years old and Schopf & Weiss LLP's billing rates have likely increased since the issuance of the opinion, the Court declines to award a rate for Mr. Rosenthal that is in excess to that charged by Mr. Baugher, an attorney with 24 years more experience than Mr. Rosenthal. *See* Biography of Peter Baugher *available at* http://sw.com/public/page.cfm?z=609218sr=2BaugherPV,0 (last visited March 1, 2006).[11]

As a final matter, Maxon Lift has not provided any evidence showing the reasonableness of the rate of $155 per hour charged for Jean Watt's services, an assistant. In the absence of such evidence, the Court reduces the requested fee by approximately one-third. Accordingly, the Court

---

[11] Plaintiffs appear to argue that Mr. Rosenthal's rate should be reduced to the amount billed by Mr. Fuoco to the Ryder Defendants, *i.e.*, $165 per hour. Pls.' Sanctions Fee Pet. Resp. to Maxon Lift at 5. However, the Court declines to adopt such an approach as Mr. Fuoco's rate is a "discounted" rate and also because of the evidence as to prior fee awards submitted by Maxon Lift in connection with its present motion.

finds as appropriate $200 per hour for the services of Mr. Rosenthal and $100 per hour for the services of Ms. Watt.

### C. *Maxon Lift's Request for Fees In Connection With Its Present Motion.*

As noted above, Maxon Lift also seeks an award of the fees and costs incurred in preparing its present motion to enforce the sanctions order. However, because this Court finds that the attorneys' fees and costs incurred in connection with Maxon Lift's present motion were not within the scope of Magistrate Judge Keys' September 8, 2005 Order, or within the scope of this Courts' October 6, 2005 Order, the reimbursement amounts of those fees and costs need not be assessed as they are not reimbursable. *See* Mem. Op. & Order, No. 03 C 0289 (N.D. Ill. Sept. 9, 2005); Minute Order, No. 03 C 0289 (N.D. Ill. Sept. 8, 2005); Minute Order, No. 03 C 0289 (N.D. Ill. Oct. 6, 2005). *See also Christman*, 2001 WL 1403024, at *3 (denying fees and expenses that were beyond the scope of recoverable costs permitted by a prior court order).

## Conclusion

For the reasons set forth above, Ryder Transportation Services and Ryder Truck Rental, Inc.'s petition to set amount of sanctions award is granted in part and denied in part. Maxon's motion to enforce sanctions order is also granted in part and denied in part. The Court awards attorneys fees of $7,873.50 to the Ryder Defendants and $2,340.00 to Maxon Lift Corporation. These fees are to be paid by Bradley Steinberg and all amounts must be paid within one month of the date this memorandum opinion and order has been entered.

**ENTERED:**

_____
UNITED STATES DISTRICT JUDGE

DATED: __MAR 14 2006__